DECISION
Before this Court is a motion to dismiss an indictment pursuant to Rule 12 of the Superior Court Rules of Criminal Procedure. Onix Delvalle (Defendant) seeks to dismiss the January 18, 2002 grand jury indictment charging him with first degree sexual assault and conspiracy to commit first degree sexual assault. The Defendant based this motion on the State's failure to present exculpatory evidence to the grand jury and other irregularities that occurred during the grand jury proceedings. The State objects to the Defendant's motion as untimely and on its merits.
 FACTS
A Providence County grand jury convened to hear charges against the Defendant and two other targets stemming from an incident alleged to have occurred on May 21, 2001 involving a young female victim. During the course of the grand jury proceedings, one grand juror inquired into the possibility of hearing testimony from "any of the [three] targets." The prosecutor replied in the negative, stating that the targets had a constitutional privilege against self-incrimination. On January 18, 2002, the grand jury returned a secret indictment (the charges not having first been filed in the District Court) against the Defendant, charging him with first degree sexual assault, in violation of G.L. 1956 §§11-37-2 and 11-37-3 and with conspiracy to commit the crime of first degree sexual assault, in violation of G.L. 1956 §§ 11-1-6 and 11-37-2.
The Defendant was subsequently arraigned on February 7, 2002. On February 13, 2002, the State requested that the Court Recording Clerk produce a tape recording of the grand jury proceedings. On February 25, 2002, the Defendant's counsel was appointed from the Public Defender's Office and immediately filed his appearance with this Court. On February 26, 2002, the Defendant, through his newly-appointed counsel, filed a motion for discovery pursuant to Rule 16 and asked the State to advise him when the grand jury tapes were available. On March 1, 2002, the State received the grand jury tapes, notification of which it filed with this Court on March 5, 2002. On March 21, 2002, in response to the Defendant's motion for discovery, the State filed an answer that provided the Defendant with contact information so that he could obtain a copy of the grand jury tapes. On August 28, 2002, the Defendant moved to compel the State to provide him with a copy of the tapes. By an Order dated September 10, 2002, this Court directed the State to procure a copy of the tapes for the Defendant within twenty days thereof. It appears that the Defendant's counsel received the tapes on September 9, 2002 and then contracted with a reporting agency to have them transcribed. The Defendant's counsel did not receive the transcripts of these tapes until December, 2002.
On January 6, 2003, the Defendant filed the present motion to dismiss the grand jury's indictment against him. The Defendant argues that the motion is properly before this Court, notwithstanding its untimely filing as prescribed by Rule 12 of the Rhode Island Superior Court Rules of Criminal Procedure, because the State employed dilatory tactics before eventually forwarding copies of the grand jury tapes to him. Substantively, the Defendant argues that the State improperly shielded the Defendant from the grand jury, thereby failing to present exculpatory evidence to that body for consideration in deciding whether this Defendant should be indicted. The State responded that the Defendant's motion is time-barred and that this Court should not exercise its discretion to hear this motion because it was filed well beyond Rule 12's thirty-day limit. The State further argues that it is not obligated to present exculpatory evidence to a grand jury and, even if it had such an obligation, it had no exculpatory evidence to present.
 Filing Motion to Dismiss Outside of Rule 12's Thirty-Day Limit
The State argues that the Defendant's motion to dismiss the indictment should fail because he did not file the motion within the time prescribed by Rule 12 of the Rhode Island Superior Court Rules of Criminal Procedure. The State points out that the Defendant's motion to dismiss was made approximately ten months after the time fixed by Rule 12. The State claims that the Defendant had access to the grand jury recordings in late March, 2002 but did not request them until September 6, 2002; furthermore, even after the Defendant received the grand jury recordings on September 9, 2002, he did not file the motion until several months thereafter. The State submits that this Court should not exercise its discretion to permit the motion because the Defendant's filing of the motion ten months beyond the prescribed time is not reasonable.
The Defendant responds that the delay in filing the present motion was attributable to the State. At oral argument, the Defendant's counsel referred to his letter to the State dated February 26, 2002, in which he requested that the State provide him with a copy of the grand jury tapes. It is the Defendant's contention that he was forced to file a motion to compel the tapes from the State in August, 2002 because the State had failed to provide them to him. The Defendant maintains that though he received the tapes in September, 2002, a lack of resources in the Public Defender's Office required that those tapes be contracted out to be transcribed. Consequently, he did not receive a transcript of those tapes until December, 2002. The Defendant submits that the delay in filing the motion is the result of the State's dilatory tactics and is best characterized as excusable neglect.
Rule 12 governs motions that present impediments to continued prosecution, such as motions to dismiss indictments. "[D]efenses and objections based on defects in the institution of the prosecution or in the indictment, information, or complaint may be raised only by motion before trial." R.I. Super. Ct. R.Crim.P. Rule 12(b)(2). These mandatory pretrial motions "shall be made no later than thirty (30) days after the plea is entered . . . but . . . the Court may permit the motion to be made within a reasonable time after the plea is entered. . . ." R.I. Super. Ct. R. Crim. P. Rule 12(b)(3) (emphasis added). The time limits set forth in Rule 12(b) are intended "to ensure that the inquiry into the alleged defects could be concluded and, if necessary, the defects cured before the court, the witnesses, and the parties have gone through the burden and expense of a trial." State v. O'Coin, 417 A.2d 310 (R.I. 1980). Though a defendant waives his right to challenge an indictment unless he makes a timely motion under Rule 12(b)(2), (3), courts will nevertheless grant relief from the harsh effects of waiver if a defendant can demonstrate why relief should be granted, notwithstanding the untimely assertion of the challenge. State v. Concannon, 457 A.2d 1350, 1355 (R.I. 1983). "It is commonplace for the trial courts to grant an extension until twenty-one [or thirty] days after the state has fulfilled its obligation to respond to a R.I. Super. R.Crim.P. 16(a) discovery request, as a defendant may not be fully aware of possible defenses and objections until after discovery is completed." John A. MacFadyen and Barbara Hurst, Rhode Island Criminal Procedure, § 12.6 (1988). The Rhode Island Supreme Court has held that a trial court did not abuse its discretion in holding that a delay of ten months in filing a grand jury challenge was not reasonable in light of the time requirements of Rule 12(b)(3). State v. Acquisto, 463 A.2d 122, 128 (R.I. 1983). However, it has also held that a trial justice's hearing of a motion to dismiss two years after the arraignment and prior to trial was within a reasonable time based on the circumstances surrounding the delay. O'Coin, 417 A.2d at 313 (defendant, rather than deliberately bypassing filing the motion or employing dilatory tactics, could not have realized at the time she entered her plea that the grand jury that indicted her was unconstitutionally composed).
In the present case, it is important to note that the Defendant's motion has been made prior to trial. See Concannon, 457 A.2d at 1355 (precluding defendant from challenging indictment because he failed to file a motion for bill of particulars and neglected to challenge the indictment either before or during trial); State v. Morin, 422 A.2d 1255, 1256 (R.I. 1980) (instructing that actual prejudice and good cause must be shown in order to be relieved of the time requirements of Rule 12(b)(2), (3) in the event that such challenge is not raised before judgment of conviction). The Defendant here was arraigned on February 7, 2002. Therefore, in order to comply with the literal requirements of Rule 12, the Defendant should have filed his motion by the second week of March, 2002, but he did not do so. However, counsel for the Defendant was not appointed from the Public Defender's Office until February 25, 2002. The following day, counsel diligently filed a discovery request on behalf of his client and asked the State to advise him when the grand jury tapes would be made available. The State filed its response to the Defendant's discovery request on March 21, 2002, also advising the Defendant that in order to obtain the grand jury tapes he should contact a named paralegal at a given telephone number.
This Court believes that the State's procedure in response to requests for copies of grand jury tapes is dilatory, outdated, and shifts the onus of production to the Defendant.[1] The State has made no effort to utilize current technology that allows for instantaneous availability of recordings and/or transcripts in our grand jury process. The State cannot unilaterally adopt such time-consuming procedures and then expect the courts to carry out the literal requirements of statutory time frames when defendants have been unfairly disadvantaged by those procedures. In the present matter, given that the State essentially places the burden on the Defendant to pursue information he has rightfully requested, and should rightfully receive directly from the State, it is understandable that the Defendant found it necessary to move this Court to compel the State to hand over the grand jury tapes. Though the State responded promptly to the Defendant's request and the looming order from this Court, necessity required that the tapes then be contracted out from the Public Defender's Office to be transcribed, warranting the further expectable delay. The State's account to this Court that the Defendant waited until September 6, 2002 to request the tapes is misleading. It is clear that the Defendant requested the grand jury tapes on February 26, 2002 — one day after his counsel was appointed and less than three weeks after his arraignment. Moreover, the State acknowledged its receipt of the tapes from the Superior Court Recording Clerk on March 1, 2002. This Court cannot think of an acceptable reason why those tapes were not immediately forwarded to the Defendant pursuant to its continuing discovery obligation under Rule 16.
Though Rule 12 prescribes a thirty-day limit for the filing of motions to dismiss, it also grants trial courts discretion to permit a motion to be filed beyond thirty days, provided that the motion is filed within a reasonable time. The circumstances of this case strongly urge this Court to exercise its discretion in applying the Rule 12 time frame. Notification of the State's receipt of the grand jury tapes was filed within just a few days of the thirty-day deadline for the Defendant to file a motion to dismiss the indictment. Thus, even if the Defendant had received the tapes that same day, he would have been provided very little, if any, opportunity within the constraints of Rule 12 to review the tapes for possible defenses and objections. In fact, the State did not forward the tapes to the Defendant until compelled to do so. This Court notes that the Defendant filed the present motion approximately one month from the date he received the transcripts of the grand jury tapes. Furthermore, the requirement of filing a Rule 12 motion before trial within the prescribed time limits was designed to cure defects before the court, the witnesses and the parties have gone through the burden of a trial. Notwithstanding the delays in the present matter, the purpose behind the Rule 12 time limit is well served by extending the time period to permit consideration of the Defendant's motion to dismiss on the facts presented.
The Defendant has demonstrated that he is entitled to relief from the harsh effects of an untimely filing of his motion to dismiss the indictment against him.[2] Therefore, this Court grants an extension of the time for filing the present motion to dismiss.
 Grand Jury Inquiry into Existence of Exculpatory Evidence
The Defendant argues that the indictment should be dismissed because one juror affirmatively inquired into the existence of exculpatory evidence through the Defendant's testimony, but the prosecutor improperly responded that the Defendant had a constitutional right against self-incrimination. The Defendant contends that preventing the grand jury from hearing evidence that it has requested is inconsistent with the independent and investigatory role of a grand jury. It is the Defendant's belief that the State prevented the grand jury from hearing exculpatory evidence. Moreover, the Defendant maintains that the prosecutor's response to the inquiry unfairly prejudiced him because of the negative inference that the grand jurors could have drawn from his failure to appear before them. The grand jury's request for this additional testimony, according to the Defendant, illustrates that the grand jurors struggled with the sufficiency of the evidence that the State presented. The Defendant submits that this Court can exercise a supervisory power and dismiss the indictment because of the prosecutor's abuse of her grand jury role as a legal advisor.
The State responds that there is no duty under Rhode Island law to present exculpatory evidence to the grand jury. The State submits that even if it were under such an obligation, it had no exculpatory evidence to provide to the grand jury. The State posits that there is no reason to believe that the Defendant would have testified if the prosecutor had responded to the inquiry any differently.[3] It is the State's procedure, as noted at oral argument, not to ask a grand jury target if he wants to speak before the grand jury after he has refused to speak to police officers, which occurred in the instant case. The State simply rejects the Defendant's portrayal of the grand jury as an investigative body but, rather, views the grand jury as an accusatorial body upon the presentation of inculpatory evidence.
The function of the grand jury is "to decide whether the evidence presented to it, unexplained and uncontradicted, gives rise to a sufficient quantum of proof to warrant the return of a formal accusation of crime." Acquisto, 463 A.2d at 127. The Rhode Island Supreme Court has observed that the Supreme Court of the United States has declined to establish a rule permitting defendants to challenge indictments on the grounds that they are not supported by adequate or competent evidence.Id. (citing Costello v. U.S., 350 U.S. 359 (1956)). The Acquisto Court quoted the Costello decision: "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." Id. InAcquisto, the victim of a sexual assault wrote two letters to the defendant that expressed the victim's enduring love for him. Id. at 126. Prior to the grand jury's consideration of the case, the Defendant's counsel requested that the prosecutor present these letters to the grand jury. Id. The case was presented by an assistant attorney general who was unaware of the request and, therefore, the grand jurors did not have the letters presented to them. Id. The defendant moved to dismiss the indictment claiming that the letters were exculpatory and tended to show bias against the defendant. Id. at 126-27. The Acquisto Court declined to exercise its supervisory power to scrutinize the nature and quality of evidence presented to the grand jury and instead adopted the U.S. Supreme Court's rule in Costello. Id. at 127. Thus, even though it assumed that the two letters tended to be exculpatory, the Acquisto Court determined that the failure to present them to the grand jury did not constitute cause to invalidate the indictment. Id. More recently, in State v.Franco, the Rhode Island Supreme Court adhered to the traditional view of the grand jury's role as set forth in Costello and declined to "micromanage" grand jury procedures. 750 A.2d 415, 419 (R.I. 2000) (restating R.I. Supreme Court's position that the grand jury is "a group of individuals who are `free to make their presentments or indictments on such information as they deemed satisfactory'").
Rhode Island is among the minority of jurisdictions that follow the traditional view that the prosecutor has no duty to present evidence favorable to the target. Sara Sun Beale, et al., Grand Jury Law andPractice, § 4:17 at 4-84 (2nd ed. 2002). "The traditional rule reflects the grand jury's development as an inquisitorial rather than an adversarial institution and the difference between the functions of the grand jury and the trial jury . . . ; it is at his trial that the defendant has an opportunity to challenge the government's evidence and present his side of the case." Id. at § 4:19 at 4-102. Though the ABA Standards for Criminal Justice assert that prosecutors should disclose to the grand jury evidence that "would substantially negate guilt," std. 3-3.6, there is no general obligation to present exculpatory evidence to the grand jury, regardless of how substantial it may be. U.S. v.Williams, 504 U.S. 36, 53 (1992) (concluding "imposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with the [grand jury] system");Acquisto, 463 A.2d at 126-27 (finding that evidence tending to impeach the credibility of a prosecution witness need not be presented to the grand jury).
"[M]ost jurisdictions agree that the grand-jury proceeding is a one-sided affair that affords prosecutors great latitude in their comments before the grand jury." State v. Mainelli, 543 A.2d 1311, 1313 (R.I. 1988). "[A]bsent any evidence that the grand jury did not review the indictment and adopt it as its own, there really would be no reason to dismiss the indictment." Id. (citing U.S. v. Cederquist, 641 F.2d 1347, 1353 (9th Cir. 1981)). Even where "egregious prosecutorial misconduct" pervades the grand jury, an indictment should not be dismissed for errors in grand jury proceedings unless such errors prejudice the defendant.Bank of Nova Scotia, 487 U.S. 250, 254 (1988). "[T]he dismissal of an indictment on the grounds of prosecutorial misconduct is an extraordinary sanction reserved for very limited and extreme circumstances." Franco,
750 A.2d at 419 (quoting Mainelli, 543 A.2d at 1313). In Bank of NovaScotia, the U.S. Supreme Court also discussed the appropriate standard to determine whether particular misconduct has been prejudicial: when employing their supervisory power in response to prosecutorial misconduct when dealing with a grand jury, lower courts remain bound by Rule 52(a) of the Federal Rules of Criminal Procedure and the balance that rule strikes between social costs and the rights of the defendant. 487 U.S. at 255. In determining whether a given error has been harmless, the focus is on the effect, if any, of the error or misconduct on the grand jury's decision to indict: dismissal is appropriate "`if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is `grave doubt' that the decision to indict was free from the substantial influence of such violations." Bank of NovaScotia, 487 U.S. at 256 (quoting U.S. v. Mechanik, 475 U.S. 66, 75 (1988)); Franco, 750 A.2d at 419 (explaining that dismissal should be reserved "to situations in which there has been flagrant prosecutorial misconduct accompanied by severe and incurable prejudice" (quoting Statev. DiPrete, 710 A.2d 1266, 1276 (R.I. 1998)); Mainelli, 543 A.2d at 1313 (in which the Rhode Island Supreme Court adopted the Bank of Nova Scotia
harmless error standard). In Franco, the Rhode Island Supreme Court held that where tapes of a predecessor grand jury proceeding were played to a successor grand jury, it was not "egregious misconduct" for a prosecutor to offer to bring in live witnesses only if twelve grand jurors voted to do so. 750 A.2d at 419. In Mainelli, the court held that the prosecutor's statement to the grand jurors that he "would have the indictment typed up while they voted" did not "create an overbearing atmosphere that would emasculate the will of the grand jury." 543 A.2d at 1313.
In most jurisdictions, the target has no right to appear before a grand jury. Beale, § 4:18 at 4-96. However, more than one-third of the states have statutory provisions dealing with exculpatory evidence, most of which give the grand jury discretion to hear evidence favorable to the target. Id. About one-fourth of the states either statutorily or judicially require prosecutors to present exculpatory evidence to the grand jury in some circumstances. Beale, § 4:17 at 4-81. In New York, which statutorily gives defendants the right to appear before a grand jury as a witness in its own behalf, the courts have recognized that it is prosecutorial misconduct to refer to the defendant's constitutionally-protected right to remain silent and not testify where the error in doing so is not harmless. State v. Scott, 70 A.D.2d 601, 602 (N.Y.App.Div. 1979). The New York courts are also willing to police the prosecutor's conduct with respect to failing to call a witness about whom the grand jury has expressed an interest: if the prosecutor's conduct "impairs the integrity of the grand jury and prejudices the defendant," the courts will dismiss the resulting indictment.[4] Beale, § 9:13 at 9-65.
Rhode Island has neither enacted a statute granting targets of grand jury investigations a right to testify and present evidence before the grand jury, nor has it enacted a statute requiring prosecutors to disclose exculpatory evidence. Furthermore, the case law in Rhode Island is clear, and has recently been affirmed, that defendants do not have the right to challenge indictments on the grounds that they are not supported by competent evidence. Because there is no obligation on the part of the State to present exculpatory evidence, regardless of its value, the Defendant's motion in the present matter challenging what is essentially the prosecutor's denial of his testimony before the grand jury must fail. The dismissal of an indictment is an extraordinary sanction, and the prosecutor's conduct here does not meet the requisite threshold for doing so. It has not been shown that the challenged conduct substantially influenced the grand jury's decision to indict. The inquiry of one grand juror about the possibility of hearing testimony from "any of the targets" does not lead this Court to gravely doubt that the grand jury's decision to indict the Defendant was free from the substantial influence of the prosecutor's conduct.
This Court makes this decision in accordance with recent precedent and with due deference to the doctrine of stare decisis. This Court is mindful, however, that the current status of the law works to the disadvantage of indigent defendants, as in the present matter, who lack the resources to obtain counsel immediately to guide them through the grand jury process. This Court respectfully urges the General Assembly to consider the adoption of substantive changes in grand jury procedure that would afford targets of grand jury investigations the right to testify and would require prosecutors to present exculpatory evidence to the grand jury. These changes would foster a grand jury process that is more meaningful, progressive, and fair to all.
 CONCLUSION
After reviewing the memoranda and the arguments before it, this Court exercises its discretion under Rule 12 and permits the Defendant to pursue the present motion to dismiss, despite the fact that it was filed outside of the Rule 12 time limit. In considering the merits of said motion, the prosecutor's response to the grand juror's inquiry did not substantially influence the grand jury's decision to indict. This Court has been granted no other authority, either by statute or case law, to exercise its supervisory role over the grand jury proceeding in this matter as requested by the Defendant. Accordingly, this Court is constrained to deny the Defendant's motion to dismiss the indictment.
[1] Grand jury tapes are only made available approximately every six weeks, and the State's procedure is to instruct, in their responses to discovery requests, that defendants contact a particular individual to obtain the tapes. The State admitted at oral argument that grand jury tapes are not made available to prosecutors in a timely fashion and, consequently, are not often obtainable for the purposes of adequately responding to discovery requests.
[2] The discretion this Court exercises here is to be distinguished from the discretion it is permitted pursuant to Rule 45(b) of the Rhode Island Superior Court Rules of Criminal Procedure. Under Rule 45(b), a court may extend a time limit prescribed by the rules, provided that the court determines that the failure to act was the result of "excusable neglect." The discretion this Court exercises here is pursuant to Rule 12(b).
[3] At oral argument, the Defendant's counsel offered several statements that he believed would have been more appropriate responses to the grand juror's inquiry, including "I'll look into it," or "Do you want me to approach the target to see if this information can be made available."
[4] The ultimate question is whether the prosecutor's comments have biased the grand jury and impaired its ability to review the case against the target impartially and independently: "Dismissal is likely in cases in which the court concludes that the prosecutor deliberately used inflammatory and irrelevant remarks to influence a reluctant grand jury to indict. The strength of the case presented by the prosecution is also an important factor; where there is ample untainted evidence to support the indictment, it is difficult to show that the prosecutor's comments were prejudicial." Beale, at § 9:2 at 9-12 (citations omitted).