STATE *vs.* JOHN GILLIGAN.

PROVIDENCE—DECEMBER 17, 1901.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1)  *Criminal Law.   Pleading.   Indictment.   Malicious Mischief.   Lessor and Lessee.*

An indictment charging the defendant, under Gen. Laws cap. 279, § 23, as amended, with maliciously and wantonly injuring and defacing a building not his own, laid the building as that of the lessor. At the time when the malicious mischief was charged to have been committed the building was in the possession of the lessee under a term for years, the lease providing that the lessee should repair the interior of the premises, including the setting of glass in windows and doors, and that the lessor should repair the exterior. The injury charged was breaking the glass in windows and door :—

*Held*, that while authority would have supported the laying of the building in the indictment as that of the lessee, yet the weight of reason, and sufficient authority, sustained the allegation of ownership in the lessor as proper, and there was no variance between the indictment and the proof.

(2)  *Malicious Mischief.   " Maliciously or Wantonly."*

*Held*, further, that, to constitute the offence as defined by statute, express malice toward the owner need not be proved, but it was sufficient to show that the act was done intentionally, without just cause ; or recklessly, without regard to the rights of others.

INDICTMENT charging the defendant with the offence set forth at length in the opinion. Heard on petition for new trial, and petition denied.

ROGERS, J.   The indictment in this case was found under Gen. Laws R. I. cap. 279, § 23, as amended by Pub. Laws cap.

736, which provides that any person who shall maliciously or wantonly in any way injure or deface any building not his own, or break the glass or any part of it in any such building shall be imprisoned, etc. The offence charged was that the defendant did maliciously and wantonly injure and deface the building of one Hannah Isherwood and did then and there break a part of the glass in said building by then and there throwing a bar of iron through a plate glass window of the value of forty dollars, and an office window and door panel of the value of seven dollars in said building.

The evidence showed that Hannah Isherwood was the owner in fee of the building, but that she had leased the same to one Joseph H. McElroy for five years from May 1, 1898, by written lease, and that the said McElroy was in the possession of said building under said lease at the time when the malicious mischief is charged to have been committed, it being agreed in said lease that the lessee should keep the interior of the leased premises in good repair including the setting of glass in the windows and doors during the continuance of the lease, and that the lessor should keep the exterior in good repair.

(1) Various exceptions were taken by the defendant to the rulings and charge of the justice presiding in the Common Pleas Division on the jury trial, at which the defendant was found guilty. The first exception is that the allegation in the indictment that it was the building of Hannah Isherwood that the defendant defaced was not supported by the evidence, which showed that the lessee, the said Joseph H. McElroy, was in the possession of the building, and hence that the allegation should have been that it was the building of said McElroy, as otherwise there would be a fatal variance between the indictment and the proof.

There is no question but that, had the building in this case been laid in the indictment as that of the lessee, the allegation would have had the support of abundant authority; but the question is whether it is fatally defective to charge it as the building of the lessor.

It has been strenuously urged at the bar that the offence

here charged is an offence against possession, that title is not drawn in question, that the ownership of the building must be laid in him who could have maintained *trespass* against the defendant for the injury committed, and that, therefore, ownership could have been laid only in the lessee in possession. The attempt to analogize the reasons for the allegation of ownership in this case with those in other cases, is, to say the least, confusing, if not misleading.

"Ownership," says Bishop in his work on Crim. Pro., Vol. 2, §§ 137, 138, "is one thing in one offence, and another thing in another. Burglary is a disturbance, not of the fee of the building regarded as real estate, but of its habitable security. Therefore, in burglary, ownership means any possession which is rightful as against the burglar. Under various circumstances the ownership may be laid equally well in one person or another; as, for example, in the master, or in the servant occupying under him. This is an important consideration, without which many of the cases will appear conflicting. In general, possession and occupancy by the alleged owner are all that are required. While he need not own the fee, he need not even pay rent. 'It is enough that it was his actual dwelling-house at the time.' Even a possession unlawful as against the person claiming title, but lawful as against the burglar, will suffice."

Again, speaking of the ownership in arson, the same learned writer says, (Ibid. § 36):—"Arson being an offence against the security of habitation, the ownership is properly, and, perhaps in most cases, necessarily laid in any person who has the present actual occupancy; or, at least, the right of such occupancy. It is immaterial whether the fee is in him or not; or, if he is in actual possession, whether another has a better right to it than he or not. Even a wrongful occupancy, by one in his own right, will support the allegation of ownership."

In cases depending on other reasons the same writer says, section 37: "Where a statute makes punishable the burning of a structure not used for dwelling, so that the offence is not against the habitation, there is no objection to laying the

ownership in the person in whom is the fee, though it is under lease to a tenant in possession.

In *The People* v. *Simpson*, 50 Cal. 304, 306, the court said : "We are convinced that in providing that 'every person who shall wilfully and maliciously burn, or cause to be burned, any dwelling house, *the property of another*, in the daytime,' shall be guilty of arson, the legislature intended to include a case of this character, where the arson was committed by a tenant in possession of the property of the landlord ; and in such a case it will be sufficient to allege and prove the property to have been in the landlord."

In *People* v. *Fisher*, 51 Cal. 319, the offence with which the defendant was charged in the indictment amounted to arson in the second degree, as defined by section 454 of the Penal Code. The house alleged to have been burned was described as the property of one, B. W. Bours. It was proven that it was his property, but that one Capurro was in possession of it under a lease from Bours ; and the point was made that, in that respect, there was a variance between the indictment and the proof ; in other words, that in an indictment for arson, the house should be described as the house of the occupant. Rhodes, J., in delivering the opinion of the court, said :—"Arson as defined by the common law, is an offence against the security of the habitation, rather than against the property which was burned (2 Bish. Crim. Law. § 24); but by the Penal Code §§ 447 and 448, the scope of the definition is materially extended. 'Any house, edifice, structure, vessel or other erection, capable of affording shelter for human beings,' is a 'building' within the meaning of the chapter of the Code defining arson, and providing for its punishment. It is not necessary that the 'house, edifice, structure, vessel, or other erection,' should have been intended for, or have been used as, a habitation ; but it is sufficient if it be 'capable of affording shelter for human beings ;' and for that reason it is not true that the wilful and malicious burning of a building which was not intended, or was not used, as a habitation, is an offence against the person rather than the property. It is not necessary, therefore, in an in-

dictment for arson of the second degree, to describe the building as the building of the occupant or tenant; but it will be sufficient to describe it as the building of the owner, though it may have been held by a tenant, under a lease from the owner."

In *State* v. *Carter*, 49 S. C. 265, 267, tried in 1897, the defendant was indicted for arson in setting fire to and burning the dwelling-house of S. L. Morris. Testimony was offered tending to show that the house burned belonged to S. L. Morris, who lived in New York, but was occupied as a dwelling-house by one, Cowan, who had leased it for a term of five years from said Morris. After conviction and exception as to variance between the allegation of ownership and the proof, in that the ownership was laid in the lessor instead of the lessee and occupant, the court, through Gary, J., said :— "Arson and burglary are both crimes against the *habitation*, and what was said by Mr. Chief Justice McIver, in the case of *State* v. *Trapp*, 17 S. C. 467, which was a case of burglary, is applicable to this case, to wit :—'So far as we can perceive, there are only two reasons for requiring the ownership of the house to be stated in an indictment for burglary : 1st. For the purpose of showing on the record that the house alleged to have been broken into was not the dwelling-house of the accused, inasmuch as one cannot commit the offence of burglary by breaking into his own house. 2nd. For the purpose of so identifying the offence as to protect the accused from a second prosecution for the same offence. Hence when the ownership is alleged to be in a person who is not the accused, and that allegation is proved upon the trial, the reasons of this requirement seem to be fully met.' This view is sustained by the case of *State* v. *Copeland*, 45 S. C. 13, which was a case of arson. The indictment may allege the dwelling-house to be that of the person occupying it as such or of the real owner thereof." Accordingly the exception was overruled.

In regard to ownership in larceny, Bishop in his work already referred to, sections 718 to 722, says :—"As a part of the description of the stolen property, and to assist in its

identification, the indictment must aver its ownership, or state some excuse for omitting this averment; such as, that the owner is unknown. . . . The rules, as to ownership, differ in some degree with the different offences. Yet, though it is not safe to accept what is said under the other titles as our guides here, some illustrative help may perhaps be obtained from such titles as Arson, Burglary, . . . and perhaps some others. In various circumstances the ownership may be equally well laid in the one or the other of two persons. Thus, where there is a general and a special owner of the stolen goods, it is a nearly universal rule that the pleader may charge them as belonging to either; though, in many circumstances, the convenience of making proof will suggest practical grounds for choice. . . . The rule is general, yet liable to be limited in the particular case, that, where chattels are taken feloniously from any bailee or other person having in them a special ownership,—as, a common carrier, a pawnee, an agistor, a hirer of the chattel, one having it to perform labor upon, the landlord of an inn with whom it is left, any other person who has it for safe keeping otherwise than as servant, a mortgagee in possession, one who under our statutes has taken up an animal as an estray, one having in possession property purchased for public use, a constable who has collected money for a creditor, any other person having the lawful possession of the article in distinction from a bare custody thereof, or even such unlawful possession as the thief's who has stolen it,—the ownership may be laid either in such possessor or the real owner at the election of the pleader. . . . The general doctrine is, that, for one to be set down in allegation as the owner of the stolen goods, he must sustain to them a relation which would entitle him to the common-law action of trespass for their taking away. Such is the rule in principle, and it is reasonably so in the authorities, but the judicial utterances on this question, are not very distinct."

In order to avoid what Mr. Justice Sherwood, in *State* v. *Moore*, 61 Mo. 276, 280, termed, "those 'unseemly niceties' as to possession, which formerly baffled prosecutions and en-

abled the guilty to escape," inasmuch as, apparently, authority can be produced for the most conflicting views, it is well to turn to reason in search of the proper solution of the question before us.

We fail to see any good purpose to be subserved in attempting to cramp the question of ownership within any mere theoretical rules or classifications such as offences against possession or habitation, etc., or other terms more applicable to civil than to criminal proceedings.

It is enough that the offence charged is against the peace and dignity of the State; that is, that the persons injured are the people of the commonwealth and not merely the individual who is the victim of the offence, for the individual can get requital for the injury done him, so far as he can get it at all, through a civil suit, but the criminal prosecution is for the offence against the State, not only to punish the offender but also to deter others from offending in like manner. When a murder, arson, burglary, or other offence, is committed, the insecurity and the apprehension of repetition work an injury to all the people, and not merely to the person killed or the person whose property is injured or despoiled. The accused is entitled to reasonable certainty as to the charge, in order, as stated, *supra*, by McIver, C. J., in *State* v. *Trapp*, to show that the property injured was not his own; and also for the purpose of so identifying the offence as to protect the accused from a second prosecution for the same offence. Those are all the purposes to be subserved by an allegation of ownership in a prosecution like the one at bar.

It is clear that both the lessor and the lessee have an interest in the premises. It would seem that the interest of the lessee for a short term merely, or whose lease was on the eve of expiring, would have less interest in the premises than the lessor. The lessor has an insurable interest, a taxable interest, and a rental interest, to say the least.

The section of the statutes that provides for the offence charged in the indictment in the case at bar, also applies to one who shall wilfully and without the consent of the owner

thereof root up, cut down, or otherwise injure or destroy or take and carry away any tree or underwood growing or standing upon the land of another. Surely, the interest of the lessor in trees that require years to grow, and that will continue to grow for years, is vastly greater than that of a lessee whose term, is brief and liable, it may be, to expire to-morrow.

Take the actual case at bar. The lease, which is in evidence, shows that McElroy, the lessee, was to keep the interior of the premises in repair, including the setting of window and door glass, and that the lessor was to keep the outside in repair. As we have before said, there is no question but that the ownership might have been properly laid in the lessee, but it is contended that it could not have been laid in the lessor. If that is so, then, under this lease, if the bar of iron thrown had not only broken glass but had also injured and defaced the exterior of the building, or still stronger, if the bar of iron had only injured and defaced the exterior of the building, it would have been fatal to allege the owner of the fee, who would be obliged to pay for the repairs in whole or in part, as the owner of the building, but it would have had to be laid in the lessee who suffered but a small part of the injury, or none at all. We do not wonder, if that is so, that the State of Missouri should have passed a statute, "thus avoiding many of those 'unseemly niceties' as to possession which formerly baffled prosecutions and enabled the guilty to escape."

We fail to see why the allegation of ownership in the lessor does not serve the purposes required as well as the allegation of ownership in the lessee would have done.

The weight of reason and sufficient authority satisfy us that the allegation of ownership in the lessor in the case at bar was not improper, and in our opinion there was no variance between the indictment and the proof.

(2)    Among other grounds, the defendant asks for a new trial because the verdict, he claims, is against the law and the evidence, and because the justice on the jury trial erred in his rulings and charge. The defendant asked the court to

charge that the State must prove, beyond a reasonable doubt, malice towards the owner on the part of the defendant ; and also damage to Hannah Isherwood.   The justice granted the first part and refused the last part of the request.   We think if the trial justice erred it was in favor of the defendant. McClain, in his Crim. Law, Vol. 2, § 829, says :—"Under some statutes it has been held that to constitute malicious mischief the injury done must be with malice towards the owner of the property and with the purpose of doing him an injury, and that mere malice towards an animal injured, or wantonness, is not sufficient.   This malice may, however, appear from the circumstances of the act.   In some cases it has been held that malice towards the owner is immaterial, and that it is the wilful or wanton injury of the animal which constitutes the crime."

Our statute provides that the act shall be done "maliciously or wantonly."   The construction placed upon the word *maliciously* has differed in various States, but we are satisfied that under our statute applicable to the case at bar the definition given to *malice* by Bouvier, in his Law Dictionary, is the proper one, viz.:—"The doing a wrongful act intentionally without just cause or excuse.   A wicked and mischievous purpose which characterizes the perpetration of an injurious act without lawful excuse."   The same author thus defines *wantonly*, viz.:—"Done in a licentious spirit, perversely, recklessly, without regard to propriety or the rights of others ; careless of consequences, and yet without settled malice," which we think properly defines the word *wantonly* as used in our statute.   The evidence in this case shows that the defendant, angered at the lessee's bar-tender for having refused to sell him liquor, threw the bar of iron maliciously or wantonly, as just defined by us.   The defendant's malice and wantonness seem to have been aroused by the bar-tender rather than by either the lessor or lessee, but it matters not who or what aroused those evil feelings ; it is enough that his mind was animated by them, or either of them, when he caused the injury to the property of another, for which he was indicted and of which he has been found

guilty. We have already said that the property damaged is sufficiently well laid, whether alleged to be the property of the lessor or lessee without regard to which in the particular case the loss or damage would fall upon.

The defendant's exception to the judge's charge, "that it doesn't make any difference whose building it is, that is not in issue—it makes no difference who owned that building—" is groundless, for those words did not stand alone, as the judge continued the sentence in this wise,—"although the State are holden to prove that the building belonged to the party it is stated in the indictment it did belong to."

The several other exceptions taken by the defendant, though modified in form, raised substantially the points already considered by us, and it will suffice to say that from an examination of the record of evidence, rulings and charge, we find nothing that will in our opinion warrant the granting of a new trial.

Petition for a new trial denied and dismissed, and case remanded to the Common Pleas Division for further proceedings.

*Charles F. Stearns, Assistant Attorney-General,* for the State.

*John P. Beagan,* for defendant.