STATE

v.

Edward FRANCO.

No. 97–362–C.A.

Supreme Court of Rhode Island.

April 13, 2000.

Aaron L. Weisman, Providence, for Plaintiff.

Paula Lynch Hardiman, Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

The defendant, Edward Franco, has appealed from judgments of conviction following the robbery of a Cranston, Rhode Island hair salon. The defendant argued that the trial justice erred in denying his motion to dismiss the grand jury indictment that led to his conviction. He further contended that the trial justice erred when he denied the defendant's motion to suppress the identification of the defendant by a witness. For the following reasons, we disagree and affirm the convictions.

### Facts

Early in the day of March 26, 1992, lifelong friends, Raymond O'Brien (O'Brien) and Gilbert Mann (Mann), met with defendant to discuss their plans to rob a restaurant that night. It was agreed that O'Brien would assist defendant in the robbery by tying up the restaurant patrons with neckties while Mann, who had one leg and was unable to run, would drive the "getaway car." This plan, however, was thwarted when defendant was "spotted" while surveying the restaurant. Intent upon proceeding with their plan, the trio drove through the Olneyville section of Providence and Cranston and while "[l]ooking for a place to rob," came upon the Dennis Marcel Hair Salon on Laurel Hill Avenue, in Cranston.

At about 7 that night, Linda Smith (Smith) noticed an unfamiliar van pull into the driveway across the street from her Cranston home. She observed two men emerge: the first, O'Brien, who crouched down and pulled something over his head, and the second, defendant, who appeared to be wearing a long black wig and was dressed completely in black. The men disappeared from her view in the direction of Laurel Hill Avenue, as did the van. Smith then called the police and reported what she had observed. While she was still on the line, Smith heard a detective dispatch a cruiser to the area.

In the meantime, the two men entered the Dennis Marcel Hair Salon, located on the corner of Lookout and Laurel Hill Avenues. Three people were inside: the owner of the salon, Dennis Hamel (Hamel), his client, Diane Remington, and his assistant, Deborah (Lindstrom) Zibelli. The defendant brandished a gun, and O'Brien carried a duffel bag, which appeared to contain a weapon. Soon thereafter, the victims were tied up and lying on the floor, and the robbers had collected the contents from Hamel's pockets, the money in the cash register, Zibelli's gratuities, and Hamel's briefcase.

Unaware of the unfolding events, Geraldine Steinmetz (Mrs. Steinmetz), a client of Hamel's, walked into the salon to retrieve a book that she earlier had left behind. She, too, was ordered to lie on the floor, and eventually was tied up. Despite Mrs. Steinmetz's pleas, defendant went out to her car and brought back Robert Steinmetz (Mr. Steinmetz), Mrs. Steinmetz's husband, who was waiting in the car. Apparently made nervous by the arrival of Mr. and Mrs. Steinmetz, Mann drove off. The defendant then threatened to kill Hamel unless Hamel revealed the whereabouts of his safe. Hamel convinced de-

fendant that he did not have a safe, and the bandits left. Without delay, Hamel called 911.

The Cranston police almost immediately apprehended O'Brien. The officers also recovered a thick green plastic bag containing the loot from the robbery in the hedges near where O'Brien was apprehended. Meanwhile, defendant went directly to the home of George Falco (Falco), showered, and changed his clothes. The following day, Hamel and Mr. Steinmetz, both of whom had significant opportunities to view the robbers, positively identified defendant from a six-photo array. Thereafter, Cranston police officers, acting upon a search warrant, seized a sweatshirt stained with black residue and a pair of black pants in the basement of Falco's home.

### Grand Jury Proceedings

On January 5, 1993, and thereafter, a Providence County grand jury heard testimony from eight witnesses in connection with the investigation of the March 26, 1992 robbery. Before the conclusion of its term, the grand jury voted a true bill on the charges against defendant, Mann, and O'Brien. Because of a clerical error on the part of the state, the grand jury was unable, prior to the end of its term, to formally report out its true bill to the Providence County Superior Court. Consequently, the grand jury voted to pass the matter over to the next grand jury.

On January 26, 1993, the succeeding grand jury listened to a tape recording of the eight witnesses who had testified in person before the preceding grand jury. Before playing the tapes, the prosecutor

explained to the grand jurors that they were not to draw adverse inferences against the subjects of the investigation because taped, rather than live, testimony was presented. The prosecutor also explained that the state would provide live witness testimony only if the grand jury, by vote of its members, made such a request after listening to the tapes. Upon listening to the taped testimony, the grand jury chose not to request live testimony and returned a true bill against all three men.[1] Specifically, the first three counts of the indictment charged defendant with first-degree robbery, count 4 charged defendant with conspiracy to commit robbery, count 5 charged defendant with assault with intent to commit robbery, and count 7 charged defendant with assault with a dangerous weapon.

The defendant subsequently filed several motions to dismiss, arguing, as he did later before this Court, that the indictment should have been dismissed. The trial justice agreed with defendant's arguments that playing the tapes to the second grand jury without prior judicial approval and that failing to record the tape or tapes when played before the second grand jury violated then existing Rule 6(e) of the Superior Court Rules of Criminal Procedure. Nevertheless, the trial justice found that the violations were essentially technical and did not warrant the drastic remedy of dismissal, and he subsequently denied the motion. As the case proceeded, defendant moved to suppress Hamel's identification of defendant. The motion was denied, and defendant ultimately was convicted before a jury on all but one of the aforementioned

---

1. The indictment charged Mann with two counts of aiding and abetting the commission of robbery and three counts of assault with intent to commit robbery. Mann thereafter entered into an agreement with the state, whereby the prosecutor would recommend that Mann serve a total of 18 months incarceration followed by 102 months suspended sentence in return for Mann's *nolo contendere* plea and his agreement to testify truthfully

when called upon. The indictment charged O'Brien with three counts of first-degree robbery, one count of conspiracy to commit robbery and one count of assault with intent to commit robbery. In return for O'Brien's *nolo contendere* plea, the state agreed to recommend a cumulative ten-year suspended sentence and to recommend that his address be sealed.

counts.[2] On November 15, 1995, the trial justice, after considering defendant's "significant prior criminal record," the "almost negligible" prospect of his rehabilitation, and the extent to which his crimes affected the victims' lives, sentenced defendant to 120 years. This appeal followed.

## Motion to Dismiss the Grand Jury Indictment

■ On appeal, defendant argued that the trial justice erred in denying his motion to dismiss the grand jury indictment. The basis for his motion was threefold. First, defendant asserted that the presentation of the taped evidence to the grand jury was improper because it precluded the grand jurors from making inquiries to the witnesses. Second, defendant contended that presenting the taped testimony to the second grand jury, without previous court approval and without recording the playing of the tapes, constituted a violation of the secrecy requirement in Rule 6(e) of the Superior Court Rules of Criminal Procedure. Finally, defendant complained that the prosecutor "essentially told the grand jury that the evidence was sufficient for it to indict" and that the prosecutor, without legal authority, told the grand jury that it would require a vote of twelve jurors to hear live witnesses.

■ In reviewing a motion to dismiss an indictment, this Court applies a harmless error inquiry. *State v. Chiellini*, 557 A.2d 1195, 1201 (R.I.1989). In other words, dismissal of an indictment grounded on an alleged nonconstitutional error is proper only " 'if it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 1199 (quoting

*Bank of Nova Scotia v. United States*, 487 U.S. 250, 256, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228, 238 (1988)).

With respect to defendant's first argument, we are not persuaded that playing the tapes improperly barred the grand jurors from fulfilling their duties through "diligent inquiry." To the contrary, our review of the proceedings disclosed that none of the grand jurors was prevented from asking questions. Thus, any alleged impropriety before the grand jury was harmless beyond a reasonable doubt.

■ The defendant's next assertion, namely, that playing the tapes was a violation of Rule 6(e) is also without merit. Rule 6(e), as it was in effect at that time, provided in pertinent part[3]:

> "A stenographic or other record shall be made of all proceedings before the grand jury other than its deliberations and voting. Disclosure of matters occurring before the grand jury, other than its deliberations or the vote of any juror where an indictment has not been returned, may be made to attorneys for the [s]tate for use in the performance of their duties. Otherwise, a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court * * * at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. * * * In the event an indictment is not returned [,] any notes of a stenographer and transcriptions of such notes, and any other recordings of the proceedings, shall be

2. The sixth charge, pertaining to assault with a dangerous weapon, namely a credit card machine that fell on Hamel's head, was dismissed at the close of evidence because there was no evidence that defendant or O'Brien possessed the intent to do bodily harm when the machine was yanked from the wall.

3. The 1999 amendment to Rule 6, subsection (e)(3)(C)(iii) of the Superior Court Rules of Criminal Procedure permits the attorney for the state to disclose matters occurring before one grand jury to another state grand jury.

delivered to and impounded by the court."

An opinion published subsequent to the 1993 finding by the trial justice that a technical violation of Rule 6(e) occurred here is completely controlling. In *State v. Miller*, 679 A.2d 867, 870 (R.I.1996), we held that a second grand jury's reliance on taped testimony that was presented live before the first grand jury did not violate Rule 6(e) because "[a] grand jury may decide whether the quality of the evidence presented to it is sufficient to warrant the return of an indictment [and because] * * * the rules of evidence that might apply to a trial do not apply to a grand jury." Our holding in *Miller* evidenced our long reliance on *Costello v. United States*, 350 U.S. 359, 363–64, 76 S.Ct. 406, 409, 100 L.Ed. 397, 403 (1956), in which the United States Supreme Court declined to establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence.

It has been our position that "in this country as in England of old the grand jury has convened as a body of laymen, free from technical rules," a group of individuals who are "free to make their presentments or indictments on such information as they deemed satisfactory." *Costello*, 350 U.S. at 362, 76 S.Ct. at 408, 100 L.Ed. at 402. Rhode Island, unlike some jurisdictions, has continued to adhere to the traditional grand jury model. This Court has declined to micro-manage grand jury procedures in the past, and we decline defendant's invitation to do so at this time.

■ The defendant's third argument, faulting the comments of the prosecutor, is equally unsupportable. We have repeatedly stated that "the dismissal of an indictment on the grounds of prosecutorial misconduct is an extraordinary sanction reserved for very limited and extreme circumstances." *State v. Mainelli*, 543 A.2d 1311, 1313 (R.I.1988). We recently expounded upon this standard, explaining that dismissal should be reserved "to situations in which there has been flagrant prosecutorial misconduct accompanied by severe and incurable prejudice." *State v. DiPrete*, 710 A.2d 1266, 1276 (R.I.1998). To hold that the trial justice here erred in denying the motion to dismiss would necessitate our voiding the conviction "even though a petit jury has unanimously found defendant guilty beyond a reasonable doubt." *State v. Manocchio*, 497 A.2d 1, 12 (R.I.1985). We point out that "[t]he United States Supreme Court, as well as this [C]ourt, has held that a trial on the merits renders harmless any defect that occurred during the grand [ ] jury process." *Mainelli*, 543 A.2d at 1313.

Our review of the transcript of the second grand jury proceeding revealed that the prosecutor made it abundantly clear that the decision to vote for a true bill or to vote for no true bill was solely in the hands of the grand jury. Our previous determination that it was not error to play the tapes to the successor grand jury leads us to the conclusion that the prosecutor's offer to bring in live witnesses upon a vote of twelve was not egregious misconduct. Thus, the trial justice did not err in concluding that the prosecutor's comments did not justify dismissal.

**Motion to Suppress the Identification**

■ The defendant also maintained that the trial justice erred in denying his motion to suppress the identification of defendant by Hamel. Two challenges to the identification procedure were raised. The defendant alleged first that the police officer prompted Hamel to be "absolutely sure" in his identification, thereby rendering the procedures impermissibly suggestive. He next contended that the failure of the police to properly authenticate the photo array, by initialing or otherwise memorializing the photograph at the time of the identification, rendered the evidence unreliable.

In reviewing the denial of a motion to suppress an identification that was allegedly tainted by an unduly suggestive procedure, we carry out a two-step analysis. *State v. Andrade,* 657 A.2d 538, 541 (R.I.1995). First, we must determine whether "the totality of circumstances discloses procedures that were 'so unnecessarily suggestive and conducive to irreparable mistaken identification that it constituted a denial of due process of law.'" *Id.* (quoting *Manson v. Brathwaite,* 432 U.S. 98, 104, 97 S.Ct. 2243, 2248, 53 L.Ed.2d 140, 147 (1977)). Only if we determine that the procedures were unduly suggestive do we proceed to the second step of our analysis and assess the reliability of the identification. *Andrade,* 657 A.2d at 541. Actually, "[e]ven if a court were to find that the procedures were unduly suggestive, admission of tainted identification testimony does not violate a defendant's due process rights, so long as the identification 'possesses sufficient aspects of reliability.'" *State v. Vanover,* 721 A.2d 430, 436 (R.I.1998) (quoting *Manson,* 432 U.S. at 106, 97 S.Ct. at 2249, 53 L.Ed.2d at 149).

With these principles in mind, our inspection of the photo array presented to the eyewitness and our review of the procedures surrounding its presentation support the trial justice's finding that the identification procedures were not unduly suggestive. There was evidence before the trial court that the police officers did not attempt to influence Hamel's identification. In fact, the trial justice described the array as both "a model of adherence to constitutional principles of fairness and due process" as well as "one of the better displays I have seen in my 21 years on the bench, as [it] relates to an objective offering to a witness of six people with similar characteristics." Therefore, it is our conclusion that the procedures surrounding the identification process were not unduly suggestive. Thus, we need not reach the reliability prong of the analysis.

In summary, therefore, we deny and dismiss the appeal and affirm the judgment of the Superior Court, to which we return the papers in the case.