# United States Court of Appeals
## For the First Circuit

No. 17-1059

UNITED STATES OF AMERICA,

Appellant,

v.

KENDALL ROSE,
Defendant, Appellee.

No. 17-1064

UNITED STATES OF AMERICA,

Appellant,

v.

IKE WEEMS, a/k/a True,
Defendant, Appellee.

No. 17-1066

UNITED STATES OF AMERICA,

Appellant,

v.

ANTHONY SABETTA,
Defendant, Appellee.

No. 17-1067

UNITED STATES OF AMERICA,

Appellant,

v.

ALBERTO RODRÍGUEZ,
Defendant, Appellee.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge,
Hon. William E. Smith, U.S. District Judge]

---

Before

Torruella, Kayatta, and Barron,
Circuit Judges.

---

Donald C. Lockhart, Assistant United States Attorney, with whom Stephen G. Dambruch, Acting United States Attorney, was on brief, for appellant.
Judith H. Mizner, Assistant Federal Public Defender, Federal Public Defender Office, was on brief, for appellees.

---

July 18, 2018

---

**TORRUELLA**, **Circuit Judge**.  Kendall Rose, Ike Weems, Anthony Sabetta, and Alberto Rodríguez (collectively, the "Defendants") brought motions under 28 U.S.C. § 2255 to vacate, set aside, or correct their sentences.  They argued that, in the wake of Johnson v. United States (Johnson II), 135 S. Ct. 2551 (2015), their convictions for the Rhode Island offense of Assault with a Dangerous Weapon (A/BDW), see R.I. Gen. Laws § 11-5-2(a), no longer qualify as predicate convictions triggering the Armed Career Criminals Act's (ACCA) mandatory 15-year sentence, see 18 U.S.C. § 924(e).  The district court agreed with them, and granted those motions.  The government appealed.  We affirm.

## I.

We begin with an overview of this case's factual and procedural background, which also gives us the opportunity to review the law that is in play here.

## A.

The facts relevant to this appeal are straightforward and uncontested.  All of the Defendants were convicted of violating 18 U.S.C. § 922(g), which forbids from possessing firearms individuals who have been convicted of crimes that are punishable with over one year of imprisonment.  "In general, the law punishes violation of this ban by up to 10 years' imprisonment."  Johnson II, 135 S. Ct. at 2555 (citing 18 U.S.C.

§ 924(a)(2)).  "But if the violator has three or more earlier convictions for a 'serious drug offense' or a 'violent felony,' [ACCA] increases his prison term to a minimum of 15 years and a maximum of life."  Id. (citing 18 U.S.C. § 924(e)).  This was the case for the Defendants, who all received mandatory sentences of at least 15 years that relied at least in part on their predicate convictions under R.I. Gen. Laws § 11-5-2(a).

After the Defendants received their ACCA-enhanced sentences, the Supreme Court decided Johnson II.  That case pertained to ACCA's definition of "violent felony" for purposes of determining whether a defendant's prior convictions trigger the statute's 15-year mandatory sentence.  Under ACCA, a "violent felony" is

> any crime punishable by imprisonment for a term exceeding one year . . . that --
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B) (emphasis added).  Johnson II held that the last of these clauses -- known as the "residual clause" (and emphasized above), 135 S. Ct. at 2563 -- was void for vagueness. Then, in Welch v. United States, the Supreme Court held that

-4-

Johnson II had announced a new substantive rule that, as a result, would apply retroactively on collateral review. 136 S. Ct. 1257, 1268 (2016). So today, ACCA-enhanced sentences that depended on predicate convictions for offenses qualifying as violent felonies under ACCA's residual clause are now invalid unless those offenses are either one of the offenses enumerated in § 924(e)(2)(B)(ii) or meet the force clause's definition of "violent felony," see id. § 924(e)(2)(B)(i).

The Defendants' § 2255 motions asserted that their convictions under R.I. Gen. Laws § 11-5-2(a) are not convictions for violent felonies under the force clause.[1] The Defendants therefore argued that they do not have the three predicate convictions necessary support their 15-year-plus sentences under ACCA. R.I. Gen. Laws § 11-5-2(a) establishes, in pertinent part, that "[e]very person who shall make an assault or battery, or both, with a dangerous weapon, or with acid or other dangerous substance, or by fire, or an assault or battery that results in serious bodily injury shall be guilty of a felony assault." Id. The statute does not expressly identify the mental state necessary to commit A/BDW. This ends up complicating things.

---

[1] It is undisputed that ADW does not qualify as a violent felony as one of ACCA's enumerated offenses, that is, "burglary, arson . . . extortion, [or another offense that] involves use of explosives." See 18 U.S.C. § 924(e)(2)(B)(ii).

The Defendants' motions came before two different district judges, who, with the parties' consent, held a joint hearing and resolved the motions in a jointly issued memorandum and order.  United States v. Sabetta, 221 F. Supp. 3d 210, 213 n.1 (D.R.I. 2016).[2]  That memorandum and order explained that "Chief Judge Smith and Judge McConnell independently reached the conclusions contained" therein.  Id.

In deciding whether, post-Johnson II, the Defendants' convictions under R.I. Gen. Laws § 11-5-2 continued to constitute convictions for "violent felonies," the district court recognized that its inquiry was limited to "the fact of conviction and the statutory definition of the prior offense."  Id. at 215 (quoting Taylor v. United States, 495 U.S. 575, 602 (1990)).  This is known as the "categorical approach."  Taylor, 495 U.S. at 602.  The district court explained that, "[t]o satisfy the force clause under the categorical approach, the use, attempted use, or threatened use of violent force must be an element of the prior offense." Sabetta, 221 F. Supp. 3d at 215 (citing Descamps v. United States, 570 U.S. 254, 277 (2013)).  As the district court put it, "[t]he

---

[2]  The district court's memorandum and order also resolved the motions of three additional individuals who are not parties to this appeal.

facts of the defendant's crime do not matter, only the elements of the offense do."  Id.; see also Bennett v. United States, 868 F.3d 1, 22 (1st Cir. 2017) ("[I]t may seem anomalous that an offense bearing the name 'aggravated assault' could escape ACCA's reach . . . . But Congress instructed us to take our cues from an offense's elements rather than from either its label or the underlying means by which that offense was carried out in a particular case." (citing Mathis v. United States, 136 S. Ct. 2243, 2251 (2016))) withdrawn, 870 F.3d 34, 36 (1st Cir. 2017).

There is a wrinkle to this, though, when a single statute "list[s] elements in the alternative, and thereby define[s] multiple crimes."  Mathis, 136 S. Ct. at 2249.  Statutes of that sort are known as "divisible" statutes.  Id.  When a defendant has been convicted under a divisible statute, courts employ what is "labeled (not very inventively) the 'modified categorical approach.'"  Descamps, 570 U.S. at 257.  Under the modified categorical approach, courts are authorized to look at a limited category of documents -- known as "Shepard documents," see Shepard v. United States, 544 U.S. 13, 20 (2005) -- to determine "which alternative formed the basis of the defendant's prior conviction," Descamps, 570 U.S. at 257.

Here, the district court first determined that R.I. Gen. Laws § 11-5-2(a) -- which it described as "not the model of

-7-

clarity" -- "is divisible[,] and that at least one of the offenses contained within that statute is [A/BDW]." Sabetta, 221 F. Supp. 3d at 216. The district court also concluded that, as the Rhode Island Supreme Court has recognized, "the act element of [A/BDW] can be accomplished by the means of an assault, a battery, or both." Id.; see (State v. Soler, 140 A.3d 755, 763 (R.I. 2016); see also Mathis, 136 S. Ct. at 2256 (explaining that in determining whether an alternatively phrased statute is divisible, courts must "determine whether its listed items are elements or means," and instructing courts to look first to state law to determine which is the case). The district court then found, in light of the Shepard documents the government had introduced, that all of the Defendants had been convicted of Rhode Island A/BDW. Sabetta, 221 F. Supp. 3d at 217.

As a result, it became incumbent upon the district court to determine whether Rhode Island A/BDW satisfies ACCA's force clause. Its analysis proceeded in two steps. First, it queried whether the mental state of recklessness is sufficient to sustain a conviction for Rhode Island A/BDW. After surveying the relevant case law -- a survey we will replicate momentarily -- the district court tentatively concluded that recklessness is enough. Id. at 220. While explaining that "this is a close call, and our conclusion is not free from doubt," the district court nonetheless

-8-

found that the rule of lenity compelled the holding that, for purposes of the Defendants' challenges to their sentences, "recklessness is sufficient to satisfy a conviction for Rhode Island A/BDW." Id.

Next, the district court set out to determine whether "a crime that only requires proving a recklessness mens rea with respect to the attempted, threatened, or actual use of force against the person of another [can] qualify as a violent felony under the ACCA's force clause." Id. at 221. This circuit's precedent, it concluded, indicated that such crimes cannot satisfy the force clause. Id. at 223. It therefore held that Rhode Island A/BDW "is not categorically a violent felony under the ACCA." Id. at 224. As a result, the district court declined to reach the Defendants' alternative argument that Rhode Island A/BDW is not a violent felony under the categorical approach because the battery form does not require "violent force." Id. at 224 n.12; see Johnson v. United States, 559 U.S. 133, 140 (2010) ("[I]n the context of [ACCA's] definition of 'violent felony,' the phrase 'physical force' means violent force -- that is, force capable of causing physical pain or injury to another person.").

Lastly, the district court rejected the government's argument that the Defendants had procedurally defaulted on their Johnson II-based challenges to their sentences by failing to

challenge the constitutionality of ACCA's residual clause at sentencing or on direct appeal. Sabetta, 221 F. Supp. 3d at 226. Any such challenge, the district court reasoned, would have been "sufficiently novel" at the time "to excuse each of the Defendants' failure to raise it at sentencing or on direct review." Id. at 227. Finding that the Defendants easily established that they suffered prejudice from the legal error underpinning their sentences -- because "if the Defendants were sentenced today, their sentences would have been statutorily capped at 120 months" -- the district court announced that it would schedule individual hearings on the Defendants' motions to vacate and be re-sentenced. Id.

After the government moved unsuccessfully for reconsideration, the district court resentenced each of the Defendants to 120 months' imprisonment. The government now appeals to us.

## II.

### A.

As an initial matter, we observe that the government does not argue that the district court erred in determining that Rhode Island A/BDW's assault and battery forms are not divisible from each other. Rather, for purposes of our analysis, the government urges us to "assume in the [D]efendants' favor that the

two components are not divisible," thereby waiving any argument to the contrary.  The Defendants agree with the government on this point.  Thus, in light of the parties' agreement that we should assume that the assault and battery forms of Rhode Island A/BDW are not divisible, our analysis proceeds under that assumption.

**B.**

We first take up the assault form of Rhode Island A/BDW. The government argued below that, consistent with Voisine v. United States, 136 S. Ct. 2272 (2016), an offense that has only a mens rea of recklessness may nonetheless satisfy ACCA's force clause. The district court did not agree.  On appeal, while the government "preserves its Voisine-based position for further review," it concedes that this circuit's case law now forecloses the argument that crimes with a mens rea of recklessness may be violent felonies under the force clause.  This concession is based on a correct understanding of our circuit's precedent.  Though, because the reasons for this are slightly convoluted, we take a moment here to explain why this is so.

In Bennett, we considered whether Maine aggravated assault, which requires a mental state of mere recklessness, constituted a violent felony under ACCA's force clause.  868 F.3d at 7.  We recognized that the petitioner's convictions could qualify as force-clause violent felonies "[o]nly if causing bodily

-11-

injury with such a reckless mental state does constitute the use of physical force against the person of another" -- a question that our circuit and the Supreme Court had left unanswered. Id. In setting out to answer that question, we first took note of our holding in United States v. Fish, 758 F.3d 1 (1st Cir. 2014), that the Massachusetts crime of assault and battery with a dangerous weapon -- which we found to require only recklessness -- did not qualify as a crime of violence under 18 U.S.C. § 16(b), which defines "crime of violence" in a manner "closely analogous" to the how ACCA's force clause defines "violent felony." Bennett, 868 F.3d at 8 (citing 758 F.3d at 9). Our holding in Fish, in turn, drew from the Supreme Court's holding in Leocal v. Ashcroft, 543 U.S. 1, 9-10 (2004), that § 16(b) does not reach crimes of negligence. Fish, 758 F.3d at 8. Though we acknowledged in Fish that "the Supreme Court explicitly limited its reasoning to negligence-or-less crimes," we concluded that "Leocal's rationale would seem to apply equally to crimes encompassing reckless conduct wherein force is brought to bear accidentally, rather than being actively employed." Id. at 9.

Bennett also considered the Supreme Court's then-recent holding in Voisine. Voisine involved 18 U.S.C. § 921(a)(33)(A)'s definition of "misdemeanor crime of domestic violence" -- for purposes of 18 U.S.C. § 922(g)(9)'s prohibition on individuals

-12-

convicted of such crimes possessing firearms -- as having an element of "the use . . . of physical force." Voisine, 136 S. Ct. at 2276. The Supreme Court held in Voisine that § 921(a)(33)(A) did encompass crimes of recklessness. Id. at 2279. We recognized in Bennett that, "to determine how Voisine bears on the question at hand, we must decide what significance, if any, to attribute to the seemingly divergent contexts and purposes between ACCA and § 922(g)(9)." Bennett, 868 F.3d at 17 (internal quotation marks omitted). But after a detailed review of those things, we still found ourselves confronted with a "grievous ambiguity" as to "whether Congress intended the phrase 'use . . . of physical force against the person of another' in ACCA's definition of a 'violent felony' to include or exclude reckless aggravated assault as Maine defines it." Id. at 23 (quoting United States v. Godin, 534 F.3d 51, 60-61 (1st Cir. 2008)). For that reason, the rule of lenity brought us to the conclusion that Maine reckless aggravated assault was not a violent felony under ACCA's force clause. Id.

However, six days after the opinion in Bennett issued, we received a "Notice of Death" from the government, informing us that the petitioner had died five days prior to the opinion issuing. Bennett, 870 F.3d at 35. This prompted us to withdraw that opinion and vacate the judgment as moot. Id. at 36. This did not mean, however, that the value of the opinion's reasoning

-13-

as to whether the force clause extends to crimes of recklessness vanished in a puff of smoke. For, between the dates when the government moved for us to withdraw the opinion in Bennett and when we formally did so, we decided United States v. Windley, 864 F.3d 36 (1st Cir. 2017) (per curiam). And that opinion, noting the possibility of Bennett's future withdrawal, stated that "this panel, after careful consideration, reached the same conclusion about whether reckless offenses qualify as violent felonies under the force clause. Thus, by citing Bennett, we not only follow precedent that is currently binding but also endorse and adopt its reasoning as our own." Id. at 37 n.2. Windley, therefore, held that Massachusetts ABDW, insofar as it may be committed with a mens rea of mere recklessness, was not a violent felony. On the basis of this precedent, the government agrees that, if recklessness is sufficient to be convicted of the assault form of Rhode Island A/BDW, that offense could not qualify as a violent felony under the force clause.

We now turn to the question of whether a mental state of recklessness is, in fact, sufficient for one to be convicted of Rhode Island A/BDW.

### c.

As the district court recognized, State v. Jeremiah bears substantially on this question. See 546 A.2d 183 (R.I.

-14-

1988), abrogated on other grounds by State v. Jackson, 752 A.2d 5 (R.I. 2000). There -- in taking up a defendant's sufficiency-of-the-evidence challenge to his conviction for Rhode Island A/BDW -- the Rhode Island Supreme Court opened its analysis by quoting its 1897 decision in State v. Baker, where it set forth that "[a]n assault, as ordinarily defined, is any unlawful attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness." Id. at 186 (quoting 38 A. 653, 654 (R.I. 1897)). In Baker, the Rhode Island Supreme Court affirmed the A/BDW conviction of a defendant who had fired a pistol at or in the direction of another individual -- an act the court characterized as "reckless." 38 A. at 654. In support of its conclusion that the defendant had committed A/BDW, the Baker court cited multiple other cases showing, it said, "that it is an assault to . . . recklessly fire a pistol in the direction of another." Id.

Here, after taking note of the term "wantonness" in Jeremiah and Baker, the district court observed that "[t]he authority here is sparse, to be sure, but the decisions of the Rhode Island Supreme Court suggest that 'wantonness' is synonymous with 'recklessness.'" Sabetta, 221 F. Supp. 3d at 218. After reviewing those decisions, and considering the government's counterarguments, the district court determined that the rule of

-15-

lenity compelled the conclusion that "recklessness is sufficient to satisfy a conviction for Rhode Island [A/BDW]." Id. at 220.

On appeal, the government argues that while Baker, "an 1897 case[,] suggests one may commit [A/BDW] by 'recklessly fir[ing] a pistol in the direction of another,' that stray passage has never once been quoted in the intervening 120 years even though Baker itself is often cited for other propositions." The government further contends that, as the post-Baker case law and other sources demonstrate, "wantonness" is not equivalent to recklessness, and is sufficiently akin to "intent" to satisfy ACCA's force clause. The Defendants, meanwhile, maintain that the district court properly understood Rhode Island law as sufficiently ambiguous on this point to require invoking the rule of lenity. We now consider these opposing views of Rhode Island law.

The government begins by arguing that Jeremiah -- despite setting forth that one may commit A/BDW with "malice or wantonness" -- stands for three principles that show that Rhode Island A/BDW requires more than recklessness. The first of these principles is that § 11-5-2(a) requires proof of an "unlawful offer to do corporal injury to another under such circumstances as may create a reasonable apprehension of immediate injury unless the person so threatened takes action or inaction to avoid it, coupled

-16-

with a _present ability_ to carry the offer into effect." _Jeremiah_, 546 A.2 at 186-87 (emphasis added). These four emphasized terms, according to the government, are proof of an intent requirement. The second relevant principle that _Jeremiah_ espoused, according to the government, is that "[i]n _Baker_ this court also recognized that '[t]o constitute an assault with a dangerous weapon it is necessary that the weapon should be presented at the party intended to be assaulted, within the distance at which it may do execution.'" _Id._ at 186 (citing 38 A. at 654). The language "intended to be assaulted," the government argues, further shows that recklessness cannot suffice. And lastly, the third principle to which the government points is that "the actual _present ability_ of the defendant to _inflict harm_ on the victim by using a dangerous weapon is an _element of the offense_ of assault with a dangerous weapon." _Id._ (emphasis added). Together, the government contends, these three principles "undercut any claim that mere recklessness is enough."

But we do not find _Jeremiah_ to provide particularly strong evidence that recklessness is insufficient to sustain a conviction for Rhode Island A/BDW. Indeed, of the passages of _Jeremiah_ that the government cites, it is only that case's invocation of _Baker_'s requirement that "the weapon should be presented at the party _intended to be assaulted_" that appears to

-17-

suggest an intent requirement. See 38 A. at 654 (emphasis added). And even this does not provide irrefutable proof. While the word "intended" undeniably speaks in some measure to an intent requirement, this word also appears amid a discussion not of the assailant's mental state, but rather of how the "weapon should be presented." Id. Thus, the passive "party intended to be assaulted" is also amenable to the reading that those words, in this context, simply mean "the would-be victim." Meanwhile, we find the remaining passages from Jeremiah that the government cites to be compatible with Rhode Island A/BDW requiring only recklessness -- for example, that the assailant make an "unlawful offer" and have the "present ability" to inflict harm. See 546 A.2d at 186-87. Thus, we are unconvinced by the government's arguments that Jeremiah shows that the word "wantonness" as used in Baker means something different from "recklessness."

The government also renews its insistence that a requirement of more than recklessness is evident in State v. Clifton, 777 A.2d 1272 (R.I. 2001), and State v. Franco, 750 A.2d 415 (R.I. 2000). In Clifton, the Rhode Island Supreme Court upheld a defendant's conviction for A/BDW because it found that the evidence introduced at trial "could sufficiently support an objective inference that Clifton possessed the requisite criminal intent to harm one or both of [the victims]." 777 A.2d at 1277.

-18-

The government's reliance on Clifton, however, seems to gloss over the difference between a crime having an intent requirement and a crime requiring the mental state of "intent."  Let us explain.  In the context of criminal law, "intentionally" can be synonymous with "purposely," see Model Penal Code § 1.13 (Am. Law Inst. 2017), which is a greater mens rea than "recklessly," see id. § 2.02(2).  But Clifton says only that Rhode Island A/BDW has a "requisite criminal intent."  777 A.2d at 1277.  It does not say that A/BDW can only be committed "intentionally."  And that distinction is important, because "criminal intent" can also simply mean "mens rea" or "mental state."  See, e.g., Morissette v. United States, 342 U.S. 246, 254-57 (1952) (contrasting strict liability regulatory offenses with those requiring "criminal intent").  Thus, it is also possible to read Clifton's reference to A/BDW's "requisite criminal intent" as indicating only that A/BDW is not a strict liability crime.  So, Clifton provides limited insight as to whether recklessness can suffice for a conviction for Rhode Island A/BDW.

Franco is likewise uninstructive on this score.  As evidence that Rhode Island A/BDW requires more than recklessness, the government cites a footnote of that opinion that explains that "[t]he sixth charge, pertaining to assault with a dangerous weapon, namely a credit card machine that fell on [the victim's] head, was

-19-

dismissed at the close of evidence because there was no evidence that defendant or [his accomplice] possessed the intent to do bodily harm when the machine was yanked from the wall." 750 A.2d at 418 n.2. But all that this footnote truly indicates is that the trial judge who dismissed this count appears to have done so pursuant to a belief that A/BDW requires "intent to do bodily harm." Whether that belief was correct was not before the court in Franco, and the opinion appears only to have included that footnote to explain -- after describing in the main text the allegations contained in counts one through five and seven -- what became of count six. See id. at 417-18. Franco, therefore, also has little bearing on the question of whether Rhode Island A/BDW requires mere recklessness or something more.

Next, the government cites State v. Hallenbeck, which, it says, in explaining that one may commit manslaughter "wantonly or recklessly," indicates that those are two different mental states. See 878 A.2d 992, 1005 (R.I. 2005). In support of the notion that wantonness is both distinct from and a more culpable mental state than recklessness, the government also cites Black's Law Dictionary, which provides the following definition of "wanton": "Unreasonably or maliciously risking harm while being utterly indifferent to the consequences. In criminal law, wanton usu[ally] connotes malice (in the criminal-law sense), while

-20-

reckless does not."  Wanton, Black's Law Dictionary 1815 (10th ed. 2014).

We are unconvinced that Hallenbeck definitively shows that "wantonly" and "recklessly" are distinct mental states under Rhode Island law.  It seems at least equally reasonable to read that above-quoted line from Hallenbeck as setting out two alternative wordings for the same mental state -- an example, perhaps, of the lexical thoroughness for which courts are known to have a penchant.  See, e.g., Herbert v. Mohawk Rubber Co., 872 F.2d 1104, 1110 (1st Cir. 1989) (explaining that a plaintiff may make out a prima facie case for employment discrimination in cases involving workforce reductions by showing, among other things, "that he was purposefully or intentionally discriminated against as an individual" (emphasis added)); United States v. Fei Lin, 139 F.3d 1303, 1309 (9th Cir. 1998) (holding that any error in district court's jury instructions that the government needed to prove beyond a reasonable doubt "that the defendant 'knowingly transmitted a communication containing a demand for ransom'" was harmless because "[b]ased on the evidence, it would not have been possible for the jury to find that appellants knowingly transmitted those demands without also finding that appellants purposefully or intentionally" did so (emphasis added)).  Of course, we recognize that the same could be said for Jeremiah's use of "malice or

-21-

wantonness." See 546 A.2d at 186 (quoting Baker, 38 A. at 654). But, because the government's objective is to show that Rhode Island A/BDW is categorically a violent felony, it needs to show that it would be impossible for a defendant to be convicted of that offense with a mental state of mere recklessness. And though Hallenbeck and Black's Law Dictionary's potential equation of "wantonness" to "malice" may both cut somewhat towards "wantonness" being distinct from "recklessness," we do not think that these sources confer certainty (least of all in light of the Defendants' multiple arguments to the contrary, which we shall turn to in a moment). Moreover, even if this were not so, and "recklessness" and "wantonness" were plainly distinct mental states, the government would still have to clear the additional hurdle of showing that crimes that can be committed "wantonly" satisfy the force clause -- a notion for which it offers scant support.

The government's final argument pertains to R.I. Gen. Laws § 11-5-2.2 -- titled "Battery--Criminal negligence." That statute, according to the government, shows that "when the state legislature wishes to allow for conviction based on a lower mens rea standard, it knows how to do so." Therefore, we take the government's argument to go, were recklessness sufficient for a conviction for Rhode Island A/BDW, then the legislature would have

-22-

used the word "recklessness" somewhere in that offense's statutory title or definition. But this does not convince us. Negligent assault, as set out in R.I. Gen. Laws § 11-5-2.2, contrasts with the separate offense of "Simple assault or battery," codified at § 11-5-3. And, it is beyond dispute that a more culpable mental state than wantonness (e.g., "intent") would support a conviction for Rhode Island A/BDW. Hence, the legislature's express provision of the solitary mens rea that could lead to conviction under § 11-5-2.2 has minimal bearing on our inquiry here: whether recklessness is above or below Rhode Island A/BDW's threshold mens rea.

Having reviewed the government's view of how we should read Rhode Island law, we now turn to the Defendants' contentions. Broadly, the Defendants argue that, at a minimum, Rhode Island law is so ambiguous as to Rhode Island A/BDW's mens rea that we should apply the rule of lenity in their favor. They call our attention to various sources suggesting that wantonness is a mens rea falling short of intent, and is effectively equivalent to recklessness.

To begin, the Defendants point out that four years after deciding Baker, the Rhode Island Supreme Court defined "wantonly" as "[d]one in a licentious spirit, perversely, recklessly, without regard to propriety or the rights of others; careless of consequences, and yet without settled malice." State v. Gilligan,

-23-

50 A. 844, 847 (R.I. 1901). The Defendants also argue that our own precedent supports this conception of "wantonness." In United States v. Tavares, we addressed whether the Massachusetts offense of assault and battery with a dangerous weapon (ABDW) is a crime of violence under ACCA. 843 F.3d 1, 12 (1st Cir. 2016). We found the state statute at issue to be divisible, encompassing two offenses, one of which criminalized "the intentional commission of a wanton or reckless act . . . causing physical or bodily injury to another." Id. (quoting Mass. Gen. Laws ch. 265, § 15A(b)). We treated that form as requiring only a "reckless mens rea." Id. at 15. And in Windley, we denominated this offense the "reckless form" of Massachusetts ABDW. 864 F.3d at 37. This, the Defendants press, demonstrates our at least implicit recognition that wantonness is tantamount to recklessness. And while we don't think this point is so forceful as to be dispositive here, we do accept that it provides indicia that it wouldn't be unreasonable to read "wantonness" in Baker and Jeremiah as establishing a mens rea of recklessness.

Next, the Defendants tell us that Rhode Island A/BDW is a "general intent" crime, for which recklessness can necessarily suffice. Indeed, in State v. Prout, the Rhode Island Supreme Court recognized Rhode Island A/BDW as a general intent crime. 996 A.2d 641, 647 (R.I. 2010). And in State v. Sivo, it explained

-24-

that "[g]eneral-intent crimes require only the intention to make the bodily movement which constitutes the act which the crime requires."  925 A.2d 901, 914 (R.I. 2007) (internal quotation marks omitted).  This, we think, does tend to add to the Defendants' contention that recklessness suffices in this instance, but we also do not find it so forceful as to be dispositive.

The Defendants next direct us to Rhode Island case law on simple assault, which, they say, provides further evidence that Rhode Island A/BDW has a mens rea of mere recklessness.  For example, the Rhode Island Supreme Court has defined assault as "a physical act of a threatening nature or an offer of corporal injury which puts an individual in reasonable fear of imminent bodily harm."  Picard v. Barry Pontiac-Buick, Inc., 654 A.2d 690, 694 (R.I. 1995) (quoting Proffitt v. Ricci, 463 A.2d 514, 517 (R.I. 1983)); see also State v. Cardona, 969 A.2d 667, 673 (R.I. 2009) (reciting the same definition in a felony domestic assault case).  This would seem to leave room for recklessness.  And crucially, in State v. Ashness, the Rhode Island Supreme Court set forth that A/BDW consists of an assault plus the additional element of the defendant's "actual present ability to inflict harm on the victim by using a dangerous weapon."  461 A.2d 659, 666 n.8 (R.I. 1983).

This too points in the direction of Rhode Island A/BDW requiring only a mental state of recklessness.

Having considered the parties' urged readings of it, we do not think that Rhode Island case law provides any resounding certainty as to whether recklessness is sufficient to support a conviction for A/BDW. Ultimately, Rhode Island's rather unclear (and possibly even conflicting) precedent regarding A/BDW's requisite mental state prevents us from concluding that is categorically a violent felony. Indeed, it appears possible that, without departing from controlling case law, a Rhode Island court could -- relying for example on Jeremiah's provision of "wantonness" as a sufficient mens rea, see 546 A.2d at 186, and Gilligan's definition of "wantonly" as "recklessly . . . without settled malice," see 50 A. at 847 -- uphold a defendant's conviction for A/BDW when the defendant had a mental state of only recklessness. And that distinct possibility, consistent with the dictates of the categorical approach, means that we cannot treat Rhode Island A/BDW as a violent felony for purposes of ACCA's force clause. See Mathis, 136 S. Ct. at 2248.

Lastly, given our acceptance of the parties' concession that battery and assault constitute different factual means of committing Rhode Island A/BDW, rather than alternative elements of that offense, we do not need to take up whether the battery form

-26-

of that offense meets the "physical force" component of ACCA's force clause. Consistent with the categorical approach, our holding that the assault form of Rhode Island A/BDW does not satisfy the force clause makes inevitable the conclusion that Rhode Island A/BDW is not a violent felony under ACCA.

**D.**

All of this leaves us with one final matter to address. Having concluded that Rhode Island A/BDW cannot serve as an ACCA predicate conviction, the district court also rejected the government's arguments that the Defendants should not be forgiven for having failed to bring a constitutional challenge to ACCA's residual clause at sentencing or on direct appeal. The district rejected this argument, reasoning that the Defendants would not have had any "reasonable basis" to have challenged the residual clause prior to Johnson II, and that they therefore had sufficient cause for failing to take that position. Sabetta, 221 F. Supp. 3d at 225-26.

On appeal, the Defendants argue that the government's challenge to that determination below is so skeletal as to be waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). The government's appellate brief first recites that, on collateral review, to forgive procedural default, a court must find both cause and prejudice, or that the petitioner is actually

innocent.  See Damon v. United States, 732 F.3d 1, 4 (1st Cir. 2013) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)). The government then explains that the district court held "that all [of the Defendants] had shown cause and prejudice, dismissing the government's contrary argument."  But, rather than renewing that "contrary argument," or otherwise asserting that the district court erred, the government simply tells us that because Rhode Island A/BDW does satisfy the force clause, the Defendants "cannot show any error, let alone actual prejudice," and that as a result, we "need not decide whether the district court was mistaken in finding 'cause.'"  Accordingly, because the government has not invited us to review the district court's holding that the Defendants did have cause, we refrain from doing so.  And because we agree with the district court that the Defendants suffered prejudice (in the form of their resultant enhanced sentences), we uphold its determination that the Defendants' procedural default does not bar them from the relief they have sought.

## III.

Because Rhode Island A/BDW does not constitute a violent felony under ACCA's force clause, the Defendants no longer have the three predicate convictions necessary to support their original sentences.  Therefore, the district court's decision granting their motions under 28 U.S.C. § 2255 is **affirmed**.

-28-